STATE OF MINNESOTA

IN SUPREME COURT

A14-1542

Hennepin County

Dietzen, J.

Jacob Stephen Brown, petitioner,

Appellant,

vs.

Filed: May 20, 2015
Office of Appellate Courts

State of Minnesota,

Respondent.

_____

Jacob Stephen Brown, Lino Lakes, Minnesota, pro se.

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant Hennepin County Attorney, Minneapolis, Minnesota, for respondent.

_____

S Y L L A B U S

The postconviction court did not err when it summarily denied appellant's petition for postconviction relief because his claims are time-barred under Minn. Stat. § 590.01, subd. 4(a) (2014) and none of the exceptions in Minn. Stat. § 590.01, subd. 4(b), are satisfied.

Affirmed.

1

Considered and decided by the court without oral argument.

O P I N I O N

DIETZEN, Justice.

Appellant Jacob Stephen Brown pleaded guilty in 1988 to first-degree murder of his estranged girlfriend, Carmen Larson, and attempted first-degree murder of her friend, M.R. The district court accepted Brown's pleas and sentenced him to consecutive terms of life in prison and 130 months. After expiration of the postconviction statute of limitations under Minn. Stat. § 590.01, subd. 4(a) (2014), Brown filed his fifth request for postconviction relief, claiming his guilty pleas were not knowing, voluntary, and intelligent. He argued his claim was not time-barred because it satisfied three of the exceptions to the statute of limitations: (1) a mental disease precluded a timely assertion of his claim, (2) his claim was based on newly discovered evidence, and (3) the interests of justice required consideration of his claim. *Id.*, subd. 4(b). The postconviction court summarily denied Brown's petition as time-barred.[1] Because the record conclusively shows that Brown's claim fails to satisfy any of the exceptions to the postconviction statute of limitations under Minn. Stat. § 590.01, subd. 4(b), we affirm.

---

[1] The postconviction court also concluded that Brown's claim was procedurally barred under the rule announced in *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976), and factually insufficient under Minn. R. Crim. P. 15.05 (setting forth the requirements for a plea withdrawal).

In 1988, Brown pleaded guilty to first-degree murder of Larson and attempted first-degree murder of M.R.[2]  *See* Minn. Stat. §§ 609.17; 609.185 (2014).  The district court accepted Brown's pleas and sentenced him to consecutive terms of life in prison and 130 months.  Brown subsequently filed a petition for postconviction relief seeking to make the sentences run concurrently pursuant to a "side agreement" allegedly made at the time the pleas were entered.  The postconviction court granted the petition, and ordered that the sentences run concurrently.  *Brown v. State (Brown I)*, 449 N.W.2d 180, 182 (Minn. 1989).

At the hearing on this postconviction petition, Brown also made a motion to withdraw his guilty pleas.  The postconviction court denied the motion, and we affirmed the denial, concluding that the record was adequate to support Brown's pleas.  *Id*. at 182-83.

In 1990, Brown filed a second postconviction petition seeking to withdraw his guilty pleas.  *Brown v. State* (*Brown II*), 481 N.W.2d 852, 852 (Minn. 1992).  He claimed that he had lacked the mental capacity to enter a guilty plea, and that he was innocent because he had an alibi that the state was aware of when he pleaded guilty.  *Id.* at 853.  The postconviction court conducted an evidentiary hearing at which Brown introduced the testimony of his mother and presented oral argument.  *Id.*  The postconviction court denied the petition, and we affirmed, concluding that there was no error and that the court properly denied the petition because Brown "failed to prove by a preponderance of the

---

[2]      The details of these crimes are set forth in our opinion on Brown's first postconviction petition, *Brown v. State (Brown I)*, 449 N.W.2d 180, 181 (Minn. 1989).

3

evidence that he lacked the mental capacity to enter a valid guilty plea." *Id.* We held that there was "no evidence of mental incompetence." *Id.*

Brown filed a third petition for postconviction relief in 1995 that alleged several grounds for relief, including that the plea procedures violated procedural rules, that the State had failed to fulfill the plea agreement, and that his conviction was the result of racial discrimination. In that petition, Brown asked for specific performance of the agreement that he claimed had induced him to enter his pleas. The postconviction court summarily denied his petition for relief, and we affirmed by an order. *Brown v. State*, No. C6-95-718, Order at 1 (Minn. filed Jan. 27, 1997).

In 2007, Brown filed a fourth petition for postconviction relief, arguing that his guilty pleas should be withdrawn as involuntary because he was incompetent when the pleas were entered, based on two psychiatric evaluations from 2006 diagnosing him with paranoid schizophrenia. *Brown v. State* (*Brown III*), 746 N.W.2d 640, 641 (Minn. 2008). The postconviction court denied the petition without an evidentiary hearing, concluding that the 2006 psychiatric evaluation provided little information regarding Brown's mental state 20 years earlier, and that Brown's argument that his pleas were involuntary had previously been rejected by this court. *Id.* We affirmed, concluding that Brown's arguments were procedurally barred by *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976). *Brown III*, 746 N.W.2d at 642.

Brown has now filed his fifth postconviction petition, under Minn. Stat. § 590.01, subd. 1, arguing that his guilty pleas should be withdrawn as involuntary because he was

4

incompetent at the time they were entered, based on four documents that he describes as newly discovered evidence of his mental illness.

The first document is a one-page report from a consulting psychiatrist at the Minnesota Correctional Facility in Saint Cloud, Dr. Richard G. Lunzer ("Lunzer report"). This report is dated August 16, 1988, 11 days after Brown's conviction, and summarizes Dr. Lunzer's psychiatric interview with Brown. The Lunzer report noted that Brown "admits that he hears voices which are apparently female and he sometimes talks to them." Lunzer noted that Brown is "extremely articulate and intelligent" and that "he will remain quite independent and self-sufficient." Lunzer opined that Brown's responses "certainly reflected the kind of stress that a person would experience having committed the crimes that he is guilty of."

The second document is a memorandum dated October 1, 2008, from Ronald H. Weill, a psychologist, to the Commissioner's Advisory Panel for the Minnesota Department of Corrections ("Weill report").[3] Weill summarized Brown's participation in psychotherapy and diagnosed Brown with schizophrenia, paranoid type. Brown disclosed examples to Weill of how he was paranoid in the Navy, including Brown's belief that he was the victim of medical experimentation by the military. Brown told Weill that he believed Larson was plotting to kill him the day he went to her residence, and that he has hallucinations that usually involve seeing his mother or his victim in his

---

[3] Brown did not file the Weill report with his petition for postconviction relief, but submitted it after the denial of his petition as an attachment to a letter asking the postconviction court to reconsider its ruling. The postconviction court considered Brown's request, but reaffirmed its previous ruling.

cell. Weill said that Brown had "above average intelligence" and had no trouble maintaining consistent employment and appropriate hygiene. Weill concluded that Brown's "mental illness is a key factor to understanding his offense and to reducing his risk to others in the future."

The third document is a U.S. Navy medical history report dated July 30, 1987, completed by Brown and signed by Warrant Officer James A. Fleck ("Fleck report"). In the report, which was written more than a year before Brown's guilty pleas, Brown stated he was depressed and suffered from a number of ailments. Brown checked "yes" to the question, "Have you ever been treated for a mental condition?"

The fourth document is an affidavit of Jerome C. Samuelson, Brown's former defense counsel, dated June 10, 1988, which was two months prior to Brown's pleas ("Samuelson affidavit"). The affidavit was drafted in response to a meeting between Brown and the prosecutors at which Samuelson was not present. In the affidavit, Samuelson observed that Brown was "under a great deal of stress because of the enormity of the charge against him, and in no emotional position to waive rights or make professional decisions without professional counsel." The Samuelson affidavit was part of Brown's second postconviction petition.

The postconviction court denied Brown's fifth petition for postconviction relief without an evidentiary hearing. The court held in part that Brown's claims were time-barred by the postconviction statute of limitations, Minn. Stat. § 590.01. Brown submitted a letter to the postconviction court, along with the Weill report, asking the

court to reconsider its ruling. The postconviction court again denied Brown's petition. This appeal follows.

I.

We review the denial of a petition for postconviction relief for an abuse of discretion. *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012). We review legal issues de novo, but our review of factual matters is limited to whether there is sufficient evidence in the record to support the postconviction court's findings. *Rickert v. State*, 795 N.W.2d 236, 239 (Minn. 2011). We do not reverse the postconviction court "unless the postconviction court exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings." *Reed v. State*, 793 N.W.2d 725, 729 (Minn. 2010).

A postconviction court need not grant a hearing on a claim if the files and records of the proceeding conclusively establish that the petitioner is not entitled to relief. Minn. Stat. § 590.04, subd. 1 (2014). Accordingly, a postconviction court may summarily deny a claim that is time barred by the postconviction statute of limitations. *Riley*, 819 N.W.2d at 170-71.

The postconviction statute of limitations provides that "[n]o petition for postconviction relief may be filed more than two years after the later of (1) the entry of judgment of conviction or sentence if no direct appeal is filed; or (2) an appellate court's

disposition of petitioner's direct appeal." Minn. Stat. § 590.01, subd. 4(a).[4] However, when this statute was enacted, the Legislature provided a two-year grace period for anyone whose conviction became final before August 1, 2005. Act of June 2, 2005, ch. 136, art. 14, § 13, 2005 Minn. Laws 1080, 1098 (codified at Minn. Stat. § 590.01). Therefore, Brown had until July 31, 2007, to file a petition for postconviction relief. Brown acknowledges that his current, fifth petition was filed several years past that date. Nevertheless, he argues his petition is not time barred because it satisfies three of the exceptions to the statute of limitations: the mental-disease exception, Minn. Stat. § 590.01, subd. 4(b)(1); the newly-discovered-evidence exception, Minn. Stat. § 590.01, subd. 4(b)(2); and the interests-of-justice exception, Minn. Stat. § 590.01, subd. 4(b)(5). To determine whether the postconviction court erred in summarily denying Brown's petition under Minn. Stat. § 590.01, we must consider whether Brown's claim satisfies any of these exceptions.

## A.

Minnesota Statutes § 590.01, subd. 4(b)(1), provides that a court may hear a petition outside of the two-year window if "the petitioner establishes that a physical

---

[4] Brown argues that he is bringing his claim under Minn. R. Crim. P. 15.05, rather than under Minn. Stat. ch. 590 (2014), and therefore the procedural requirements of Minn. Stat. § 590.01 should not apply. We have held that "[w]hen a criminal defendant seeks to withdraw a guilty plea under Rule 15.05, after the defendant has been sentenced, the motion to withdraw the plea must be raised in a petition for postconviction relief." *James v. State*, 699 N.W.2d 723, 727 (Minn. 2005). Therefore, Brown's motion to withdraw his pleas must meet the requirements of Minn. Stat. ch. 590. *See State v. Coles*, ___ N.W.2d ___, 2015 WL 1652901 at *5 (Minn. Apr. 15, 2015) (holding that because the defendant's challenge to his sentence implicated his plea agreement, the defendant's request must be construed as a petition for postconviction relief).

disability or mental disease precluded a timely assertion of the claim." The postconviction court found that "the evidence submitted fails to establish by a fair probability that [Brown] suffered from a mental disease. The reports make no indication that [Brown] was diagnosed with a mental impairment. Any symptoms of mental illness are reported by [Brown] himself, and are not observed by a professional." The court also stated that, even if it found that Brown suffered from a mental disease at the time his pleas were entered, "the claim under this exception still fails because the record lacks any evidence suggesting the mental disease precluded a timely assertion of his claim. In fact, [Brown's] own submissions suggest the contrary. According to [the] prison psychiatrist's report, [Brown] was intelligent, articulate, formal, independent, and self-sufficient."

Like the postconviction court, we conclude that Brown has not shown that a mental illness prevented him from asserting his claim in a timely manner. The documents submitted by Brown do not establish that he had a mental illness during the two years when the statute of limitations was running on his claim, between 2005 and 2007. Both the Lunzer report and the Weill report emphasize Brown's intelligence and self-sufficiency and do not suggest that he would previously have been incapable of asserting a claim. Moreover, the alleged mental illness did not prevent Brown from filing his four earlier requests for postconviction relief. He therefore has failed to meet the exception in Minn. Stat. § 590.01, subd. 4(b)(1).

B.

The newly-discovered-evidence exception, Minn. Stat. § 590.01, subd. 4(b)(2), states that a court may hear a petition if:

9

[T]he petitioner alleges the existence of newly discovered evidence . . . that could not have been ascertained by the exercise of due diligence by the petitioner or petitioner's attorney within the two-year time period for filing a postconviction petition, and the evidence is not cumulative to evidence presented at trial, is not for impeachment purposes, and establishes by a clear and convincing standard that the petitioner is innocent of the offense or offenses for which the petitioner was convicted.

To satisfy this exception, a petitioner must allege: "(1) the existence of newly discovered evidence that could not have been ascertained by the exercise of due diligence within the two-year time period for filing a postconviction petition, and (2) that the newly discovered evidence establishes the petitioner's innocence by clear and convincing evidence." *Erickson v. State*, 842 N.W.2d 314, 318 (Minn. 2014). The postconviction court need not hold an evidentiary hearing "if the substance of the affidavit purporting to contain newly discovered evidence, when taken at face value, is insufficient to entitle the petitioner to the relief requested." *Scherf v. State*, 788 N.W.2d 504, 508 (Minn. 2010).

To prove a claim by clear and convincing evidence requires a party's evidence to be "unequivocal, intrinsically probable and credible, and free from frailties." *Gassler v. State*, 787 N.W.2d 575, 583 (Minn. 2010). The innocence prong in subdivision 4(b)(2) requires "more than an uncertainty" about the petitioner's guilt. *Riley*, 819 N.W.2d at 170. Instead, establishing "actual innocence" requires the petitioner to prove it is "more likely than not that no reasonable jury would convict." *Id.*; *see also Miles v. State*, 800 N.W.2d 778, 783 (Minn. 2011) (holding that a petitioner must demonstrate that the newly discovered evidence "on its face" would prove the petitioner's innocence by a clear and convincing standard).

10

We conclude that Brown has failed to meet the innocence prong of the newly-discovered-evidence exception. Taken at face value, the four documents that Brown has presented do not establish clear and convincing evidence of his actual innocence, nor does he allege otherwise in his petition. Therefore, Brown has failed to satisfy the requirements of Minn. Stat. § 590.01, subd. 4(b)(2).

C.

The final exception to the time bar provides that a court may hear a time-barred petition for postconviction relief if "the petitioner establishes to the satisfaction of the court that the petition is not frivolous and is in the interests of justice." Minn. Stat. § 590.01, subd. 4(b)(5). We conclude that Brown has not satisfied this exception.

Under the interests-of-justice exception, the petitioner must establish that "the petition is not frivolous and is in the interests of justice." *Id*. The exception is triggered by an injustice that *caused* the petitioner to miss the primary postconviction deadline, not the substantive merits of the petition. *Sanchez v. State*, 816 N.W.2d 550, 557 (Minn. 2012). A petition is frivolous "if it is perfectly apparent, without argument, that the petition is without merit." *Gassler*, 787 N.W.2d at 586. We have reserved the interests-of-justice exception "for exceptional cases." *Riley*, 819 N.W.2d at 170.

Brown contends that he was unable to timely assert his current claim because his former counsel, Jerome Samuelson, did not file his affidavit with the clerk of court, and the County Attorney and Department of Corrections lost or misfiled records pertaining to his mental illness. The record, however, does not support these contentions. Samuelson's affidavit was attached to Brown's second petition, which was filed in 1990.

11

Consequently, Samuelson's failure to file the affidavit did not prevent Brown from raising his current claim before the statute of limitations expired in 2007.

Brown relies upon a letter from the County Attorney's office to argue that documents were lost. The prosecutor's October 11, 1996, letter states, "[t]o the best of my recollection, you are correct; i.e., I do recall telephonically notifying you on 10 October 1994 that, after several searches, I concluded that your property had apparently been lost or destroyed." The letter, however, does not identify the property in question. Without something more, Brown's assertion that the property referenced in the prosecutor's letter included Brown's medical and Navy records lacks a factual basis. Brown also fails to explain how he ultimately obtained the documents in question and why he was unable to make use of that process during the 13-year period between the October 1994 telephone call and the expiration of the statute of limitations in July 2007. Consequently, Brown has not established that review outside of the statute of limitations is necessary in the interests of justice under Minn. Stat. § 590.01, subd. 4(b)(5).

In sum, the record conclusively shows that Brown's claim fails to satisfy any of the exceptions in Minn. Stat. § 590.01, subd. 4(b), and therefore his fifth request for postconviction relief is time-barred under Minn. Stat. § 590.01, subd. 4(a). Because the postconviction court did not err when it summarily denied Brown's petition, we affirm.[5]

Affirmed.

---

[5] Because we conclude that Brown's petition is time-barred, we need not address whether his petition is procedurally barred under *Knaffla*, 309 Minn. at 252, 243 N.W.2d at 741.